478 A.2d 480

## In re ADOPTION OF FAITH M. and Victoria M.

### Appeal of THEODORE R.M.

Superior Court of Pennsylvania.

Argued Sept. 27, 1983.

Filed June 29, 1984.

Petition for Allowance of Appeal Granted Nov. 19, 1984.

---

R. Downie, Jr., Beaver Falls, for appellant.

Gretchen S. Reed, Beaver, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

The appellant-natural father appeals an order granting the appellee-natural mother's petition for the involuntary termination of the appellant's parental rights to the parties' two daughters. Concluding under the circumstances that the appellant did not neglect his parental duties during any six-month period, we reverse the trial court's termination order.

The appellant and the appellee were married on July 6, 1974. On January 18, 1975, the parties' first daughter, Faith, was born. Thereafter, the parties began to experience marital problems which culminated in the departure of the appellee and Faith from the parties' Wisconsin marital home.

At the time of the parties' separation, the appellee was three months pregnant. On June 19, 1976, the parties' second daughter, Victoria, was born in Pennsylvania where

the appellee and Faith had resided since the parties' separation.

Meanwhile, on January 15, 1976, the appellee filed for divorce in Wisconsin's Polk County court. After a hearing at which the appellant appeared in person and through his attorney, the appellee appeared only through her attorney, and the parties' children appeared solely through their court-appointed attorney (guardian ad litem), the Polk County court issued a divorce decree which awarded custody of the parties' daughters to the appellant and reasonable visitation rights to the appellee. The divorce decree became effective on October 26, 1976, and was not appealed by the appellee.

However, despite the Wisconsin court's award of custody to the appellant, the parties' daughters continued to live in Pennsylvania with the appellee. Consequently, on March 15, 1977, the appellant sought to enforce the Wisconsin custody award by petitioning the Court of Common Pleas of Beaver County for a writ of habeas corpus. A hearing on the matter was held on April 20, 1977, at which time both the appellant and the appellee appeared with their counsel, and the appellant was personally served with the appellee's complaint for child support.

Following negotiations by the parties and their counsel, on April 21, 1977, the Beaver County court issued an order giving the appellee custody of the parties' children and allowing the appellant several weeks of yearly visitation. As a precondition to exercising his visitation rights, the appellant was required to post a cash bond of fifteen hundred dollars. By a separate order of April 21, 1977, the appellant was also directed to make monthly child support payments of one hundred and thirty dollars.

Subsequently, the appellant failed to post a bond and therefore did not exercise his visitation rights pursuant to the April 21 court order. In January of 1981 the appellee remarried, and her new husband expressed a desire to adopt Faith and Victoria. As a result, on May 25, 1982, the

appellee filed a petition to terminate the appellant's parental rights.

After a three-day hearing at which both the appellant and the appellee testified along with their current spouses and other witnesses, the Beaver County court involuntarily terminated the appellant's parental rights on July 1, 1982. The granting of the appellee's termination petition forms the basis of the appeal now before us.[1]

In accordance with the dictates of *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), "any party in Pennsylvania attempting to terminate parental rights must establish by clear and convincing evidence the existence of grounds for doing so." *Appeal of G.J.A.*, 304 Pa.Super.Ct. 21, 25, 450 A.2d 80, 82 (1982) (footnote deleted). Moreover, a termination order must rest upon competent evidence and cannot be " 'predicated upon capricious disbelief of competent and credible evidence.' "[2] *In*

1. There is substantial confusion in this case concerning whether the appellant was afforded an opportunity to file exceptions to the hearing court's termination order. Immediately after the conclusion of the witnesses' testimony on April 21, 1977, the court announced on the record that the appellant's rights would be terminated. As soon as the court's decision was announced, counsel for the appellant asked that the court vacate its order and permit counsel to make a closing argument and submit a memorandum of law in support thereof. The court denied the appellant's request and stated that the appellant could appeal the court's decision within thirty days. Record at 223–24. Due to the extremely sensitive nature of the rights in question, *see Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the confusion stemming from the court's comments of record we are unwilling in this instance to hold, as the appellee asks, that no issues have been properly preserved for appellate review because the appellant failed to file exceptions under the Beaver County Orphans' Court rules. This opinion should not be construed, however, as condoning general noncompliance with the Beaver County rules mandating exceptions.

2. " 'While we will not usurp the trial court's right to assess the credibility of the witnesses appearing before him, we will not condone his ignoring facts which are of record and the credibility of which is not challenged.' " *In re Adoption of Barnett*, 304 Pa.Super.Ct. 514, 521, 450 A.2d 1356, 1360 (1982) (citation omitted). We recognize that the issue of the scope of review to be applied in involuntary termination cases is presently before our en banc court in the case of *In re James J.*, No. 2776 Philadelphia, 1981, argued February 11, 1983; however,

*re Adoption of Barnett,* 304 Pa.Super.Ct. 514, 521, 450 A.2d 1356, 1360 (1982) (citation omitted); *In re Adoption of M.M.,* 492 Pa. 457, 424 A.2d 1280 (1981). Thus, in reviewing a challenged termination order, we must ascertain whether the order is supported by clear and convincing, competent evidence.

"[P]arental obligation is a positive duty which requires affirmative performance ... [including] a genuine effort to maintain communication and association with the child .... [P]arental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' " *In re Adoption of R.W.G.,* 494 Pa. 311, 314–15, 431 A.2d 274, 276 (1981) (citation omitted). Where a "parent by conduct continuing for a period of at least six months ... has ... failed to perform parental duties," Section 2511(a)(1) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), authorizes the involuntary termination of parental rights.

■ Nevertheless, a failure to perform parental obligations does not automatically warrant an involuntary termination of parental rights. *In re Adoption of J.A.B.,* 487 Pa. 79, 408 A.2d 1363 (1979). Rather, the nonperformance of parental duties must be evaluated under the totality of the circumstances confronting the individual parent whose rights are jeopardized, and consideration must be afforded to any excuses proffered to explain the nonperformance. *In re D.J.Y.,* 487 Pa. 125, 408 A.2d 1387 (1979); *In re Adoption of J.S.H.,* 299 Pa.Super.Ct. 90, 445 A.2d 162 (1982). "A parent's performance must be measured in light of 'what would be expected of an individual in circumstances in which the parent under examination finds himself.' " *In re Adoption of B.D.S.,* 494 Pa. 171, 179, 431 A.2d 203, 207 (1981) (citation omitted). But "to safeguard his or her parental rights, a parent may not acquiesce in obstructive behavior by ... the custodial parent. He or she must exhibit 'reasonable firmness' in refusing to yield to such obstacles." *In re Adoption of J.S.H.,* 299 Pa.Super. at 102,

under either a broad or a narrow scope of review, the result in this case would be the same.

445 A.2d at 168 (Beck, J., concurring); *In re Adoption of J.S.M., Jr.,* 492 Pa. 313, 424 A.2d 878 (1981); *In re D.J.Y.*

█ In the case sub judice the appellant was awarded custody of the parties' daughters by a 1976 Wisconsin court decree. Record at 58. However, despite the Wisconsin decree, Faith and Victoria continued to reside in Pennsylvania with the appellee. Attempting to gain actual custody of his daughters, the appellant in 1977 initiated an action in the Beaver County common pleas court. Record at 8, 60. It is undisputed that since the parties' separation, the appellant's sole face-to-face contact with Faith and Victoria occurred in conjunction with the appellant's Beaver County suit. Record at 46, 90. However both the appellant and the appellee testified that continuously throughout the years after the parties' separation, the appellant sent Faith and Victoria Christmas and birthday gifts. Record at 16–19, 123, 130, 164–65.

The appellant stated that although his earliest gifts were acknowledged by thank-you notes from the appellee, some of his later gifts were not thus acknowledged so he began sending presents to his daughters by certified mail, return receipt requested. Record at 63, 131, 163. The record further discloses that after the parties' separation, the appellee and the parties' children lived in the home of the appellee's parents until the appellee remarried and moved to a house next to her parents' home. Record at 122. The appellee never informed the appellant of her address change, and the appellant continued sending presents by certified mail to the home of the appellee's parents. Record at 123.

The appellee admitted that on at least two occasions cards accompanied the appellant's gifts. Record at 19. Moreover, the appellee admitted that the appellant telephoned Faith on her fourth birthday and that approximately three or four months thereafter, the appellee acquired an unlisted telephone number which she did not give to the appellant. Record at 25–26, 64–65.

In addition, the appellant introduced into evidence a bank savings account passbook which showed that on October 17, 1980, he opened a joint bank account in his name and the names of Faith and Victoria. Record at 72.

The Beaver County court's decision in this case was largely premised upon a finding that the appellant did not post a visitation bond and make court-ordered child support payments. Hearing Court Opinion at 5–8. But "being a parent is more than ... a financial obligation.... [T]he performance of parental duties [is] ... an affirmative obligation to perform a *composite* of 'tasks....' [D]ereliction of *one* responsibility, albeit a responsibility as important as support, may not under the particular circumstances warrant a complete termination of parental rights." *In re McAhren*, 460 Pa. 63, 71–72, 331 A.2d 419, 423 (1975) (emphasis in original).

Here, the appellant testified that his income was derived from operating his dairy farm. The appellant also avowed that his farm income was exceeded by his farm debts which included repayment of a Farmers Home Administration loan for $190,000 and a Production Credit Association loan for $24,500. Record at 79–80; *see also* Record at 81–82, 96–99, 105–06, 116, 118. The appellant stated that under the terms of his loan agreements, if any farm assets were sold, the proceeds of the sale would have to be used for debt repayment. Record at 125–28.

The appellant declared that he had tried to borrow money in order to post a visitation bond but that, given his farm's financial situation, two lending institutions had rejected his loan applications. Record at 62–63, 106, 125. The appellant added that his farm debts prevented his sending money to support Faith and Victoria. Record at 66. Asked how he maintained himself, his new wife,[3] and their children, the appellant explained that most of the family's food was grown on the farm, that the family was housed on the farm, and that relatives contributed used clothing. Record at 100, 114. Thus, the appellant contended that his lack of finan-

3. The appellant remarried on April 30, 1977.

cial support for Faith and Victoria resulted not from an unwillingness to provide for his daughters but from an inability to provide for them unless they resided on the farm.[4]

Considering the totality of the circumstances in this case, *i.e.,* the appellant's continual efforts to utilize the resources available to develop a parent-child relationship, we hold that the record lacks clear and convincing evidence upon which to terminate the appellant's parental rights.

Accordingly, we reverse the order of the Court of Common Pleas of Beaver County.

**4.** Furthermore, the appellant testified about a series of events which led him to believe, albeit mistakenly, that the 1977 Beaver County support order was no longer in effect. Record at 70–71, 84. The assistant district attorney of Polk County, Wisconsin, informed the appellant that on February 20, 1978, the appellee withdrew a support complaint filed pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (1968), Act of December 6, 1972, P.L. 1365, 62 P.S. §§ 2043.1/43, *repealed by* Act of April 28, 1978, P.L. 202 [similar provisions now appear at 42 Pa.C.S. §§ 6741–80]. Record at 71, 136–43; appellant's Exhibit H. A Beaver County Domestic Relations Hearing Officer also testified that her office last contacted the appellant on March 1, 1978, after which date her office listed the parties' file as inactive. Record at 143–45.