482 A.2d 660

**In re Involuntary Termination of Parental Rights Concerning the Minor Child BABY BOY P.**

**Appeal of BRO. JAMAL HASHIM B.**

Superior Court of Pennsylvania.

Submitted May 31, 1984.

Filed Sept. 28, 1984.

Bro Jamal Hashim, B., in propria persona.

Emil F. Toften, Chalfont, for Bucks County, participating party.

Richard I. Moore, Southampton, for Child Advocate, participating party.

Before MONTEMURO, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

In this pro se appeal, appellant challenges the lower court's July 12, 1983 order involuntarily terminating his parental rights.[1] Upon thorough review of the record, and imposition of the appropriate standard of review, we find that the lower court's determination is well-supported by the evidence. Accordingly, we affirm.

An appellate court, in reviewing a termination order, must employ a broad, comprehensive review of the record, but is limited in its standard of review to a determination of whether "the trial court's termination of [the petitioner's] parental rights is supported by competent evidence." *In re Adoption of James J.*, 332 Pa.Superior Ct. 486, ——, 481 A.2d 892, 894 (1984). Stated differently, unless the lower court has abused its discretion or committed an error of law, the order must stand. Furthermore, the burden of proof on the party seeking to terminate another's parental rights is one of clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "In order to meet the clear and convincing burden of proof appellee must instill in the mind of the court a firm belief or conviction." *In re Adoption of James J., supra* 332 Pa.Superior Ct. at ——, 481 A.2d at 896. Our Supreme Court has described this highest civil evidentiary standard as follows:

The witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that

---

1. In appellant's "Statement of the Questions Involved" he makes eight statements, all of which concern the lower court's order and the sufficiency of the evidence. We note that all of his specific concerns are addressed herein.

their testimony is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitance, of the truth of the precise facts in issue ... It is not necessary that the evidence be uncontradicted ..., provided it carries a clear conviction to the mind ... or carries a clear conviction of its truth ...

*La Rocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).

So viewed, the facts are as follows: The child at issue, Baby Boy P., was born out of wedlock on May 2, 1982. The natural mother, Charlotte P., placed the child with appellee, the Bucks County Children and Youth Social Services Agency, upon her release from the hospital. The child was subsequently placed in foster care by agreement of both parents because the mother wanted the child placed for adoption[2] and the father, appellant, lacked the financial resources to assume custody at the time. Approximately two weeks after the child's birth, appellant expressed his desire to obtain ultimate custody of the child and, consequently, met with Jean Berger, a social worker for appellee. A service plan was drawn up, comprising, *inter alia,* a visiting schedule for appellant and the requirement that appellant attend parenting classes.

Appellant's visits with the child, from June 16, 1982 until the last visit on February 16, 1983, six months before the lower court's termination hearing, were sporadic. Berger testified that the visits were often cancelled because of appellant's inability to afford or arrange adequate transportation from Philadelphia to Bucks County. Several times appellant either failed to attend the visit or was so late that the foster mother and child had to depart. *See* N.T. June 8, 1983 at 64 *et seq.* Moreover, from the last visit on February 16, 1983 to the June hearing, appellant never inquired as to his son's welfare or the foster care situation. Additionally, Berger testified that, to her knowledge, and de-

---

**2.** The lower court granted Charlotte P.'s petition to voluntarily relinquish her parental rights and duties to the child at issue and on July 12, 1983, finally terminated her rights and awarded custody of the child to the Bucks County Children and Youth Services Agency. This part of the order has not been appealed.

spite her continued efforts to encourage his attendance, appellant did not attend the required parenting classes.[3]

Other testimony focused on appellant's housing, income, homelife and care of his remaining children. The record reveals that, at the time of the termination hearing, appellant had been residing for a two-month period in one room of a multi-room house with Christine C–B. and an infant daughter. (N.T. June 8, 1983 at 11, 24). Prior to this juncture, appellant and C–B. had been involved in a long-term relationship characterized by several separations.[4] (*Id.*) Appellant and C–B. had two other children, both of whom currently live in medical foster care.[5] These two older children were removed from appellant's and C–B.'s care following a medical diagnosis of "failure to thrive" in both children and the added diagnosis of a severe case of rickets, a vitamin deficiency, in one child. (N.T. June 8, 1983 at 31). Appellant and C–B. both testified that the children's nutritional problems were caused by the dietary dictates of their religion, coupled with their difficult financial circumstances.[6] (N.T. June 8, 1983 at 22). They apparently had planned to share child care for their children and Baby Boy P.

3. Berger, aware of appellant's financial and transportation problems, had located a parenting class at the Booth Maternity Center in Philadelphia, and had discussed with him workshops that would be beneficial. (N.T. June 8, 1983 at 78).

Christine C–B., appellant's companion, testified that appellant attended one or two child psychology classes at the Philadelphia Community College. Although this testimony was not specifically addressed by the lower court, we infer that the court, in evaluating the testimony and appellant's actions, felt that this fact was insufficient to find that appellant had fulfilled his obligation under the service plan.

4. The record reveals that the child in question, Baby Boy P., was conceived during one of these separations.

5. We agree with the lower court's ruling that testimony relating to the care and condition of appellant's two older children is exceedingly relevant to the determination of appellant's parental rights.

6. We decline to comment on appellant's religious beliefs. We note, however, that the testimony presented on behalf of appellant tended more to explain those beliefs than to evidence appellant's love and ability to care for, or relationship with, his son.

The record further indicates that, although appellant continually asserted that he was on a waiting list to receive a house through the Philadelphia Housing program by late summer, 1982, by the June, 1983 hearing, he had not yet received the home, nor offered any indication as to when, if ever, one would become available. (N.T. June 8, 1983 at 73). Appellant also testified that he had no current income and was not on public assistance, but was trying to establish a recycling business and hoped to open a restaurant. (N.T. June 8, 1983 at 13). C–B. stated that she was on welfare, made clothes for the family and others, and hoped to join appellant's restaurant venture. (N.T. June 8, 1983 at 26). It is apparent from the record, however, that, more than a year after the child's birth, appellant had accomplished little in terms of improving the family's housing or financial status and that his two older children continued to live in foster care placements.

Parental rights may be involuntarily terminated on the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child be to without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

Adoption Act, October 15, 1980, P.L. 934, No. 163, § 1, effective January 1, 1981, 23 Pa.C.S.A. § 2511(a). Further, [t]he court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

In applying the above statutory guidelines and finding that the Agency had supported its petition for termination with clear and convincing evidence, the lower court made the following findings of fact:

[Appellant] had never performed any parental duties and had made no real attempt to develop a relationship with his son as a person and in fact seemed totally uninterested in his son as a person and in his growth and development. He made no honest effort to provide a suitable place for his Child to live or to attempt to provide a secure, safe place for his Child. He made no effort to visit regularly with his son. In our opinion, [appellant] was satisfied to permit his Child to live in a foster home for an indeterminate time. He never attempted to accomplish any of the goals set up by the Agency for the return of his Child. His other children are still in the protective care of the Philadelphia Agency and he did not present any evidence as to his attempts to provide a safe and secure home for them. His care of them had resulted in the serious medical condition which resulted in their being hospitalized and placed in medical foster care ... [Appellant] presented no evidence as to his attempts to find employment or attempts to improve his living conditions for a period of more than a year and has failed to remedy the conditions which led to the Child's initial placement with the Agency. The conditions which led to the Child's placement have continued to exist for a period in excess of six months, more particularly for fifteen months, and

[appellant] cannot or will not remedy those conditions which led to the Child's placement within a reasonable time.

(Lower Court Opinion at 8–10).

 Following a comprehensive review of the evidence supporting the lower court's findings we conclude that the lower court acted in its discretion in terminating appellant's parental rights. "Experience has taught the unhappy lesson that the parental relationship is not an infallible guarantee that the parent will provide the care and concern essential to a child's proper development." *Ellerbee v. Hooks*, 490 Pa. 363, 368, 416 A.2d 512, 514 (1980). Further, the parent-child relationship may be disrupted only upon a clear showing of necessity and should removal be necessary to protect the child, every effort should be made to reunite the family. A parent, however, has an affirmative duty to work toward reunification. *In re Interest of C.M.E.*, 301 Pa.Superior Ct. 579, 586, 448 A.2d 59, 63 (1982). He must "[use] all available resources to preserve his parental relations and ' "[exercise] reasonable firmness" in declining to yield to obstacles ....' " *Adoption of M.T.T.*, 467 Pa. 88, 96, 354 A.2d 564, 568 (1976), *quoting Adoption of McCray*, 460 Pa. 210, 216, 331 A.2d 652, 655 (1975), and *Adoption of J.R.F.*, 27 Somerset L.J. 298, 304 (Pa.C.P.Orph.Div.1972). *See also Adoption of S.H.*, 476 Pa. 608, 610–11, 383 A.2d 529, 530 (1978); *In re Adoption of B.D.S.*, 494 Pa. 171, 179, 431 A.2d 203, 207 (1981). Finally, "[a]ll circumstances must be considered when analyzing a parent's performance of parental obligations in a proceeding for termination of parental rights; the parent's performance must be measured in light of what would be expected of an individual in circumstances which the parent under examination finds [him]self." *In re Interest of C.M.E., supra* 301 Pa.Superior Ct. at 587, 448 A.2d at 63.

In the instant case, it is evident that appellant failed to exert the effort required to either establish or permit him to continue the parent-child relationship. Appellant's visits for the first six months were infrequent, and ceased altogether

after February 16, 1983. We have no indication that appellant attempted to overcome the financial and transportational obstacles hindering these visits either by seeking employment pending the fruition of his plans for a recycling or restaurant business or by asking appellee or Berger to devise more practical visitation terms. It is apparent that, as time went on, appellant's interest in developing a relationship with his son waned. Further, appellee clearly made its services available to appellant and tried to enhance appellant's parenting skills. *See In the Matter of M.L.W.*, 307 Pa.Super. 29, 36, 452 A.2d 1021, 1025 ("A parent must be able to seek the assistance of a Child Welfare Service with the expectation that the agency will exert its best efforts in working with the parent and the child to improve the parent's skills and understanding.").

The circumstances leading to a termination of parental rights in *In the Matter of the Adoption of J.S.H.*, 299 Pa.Superior Ct. 90, 445 A.2d 162 (1982), are similar to those in the instant case. In *Adoption of J.S.H.*, the child was placed with a welfare agency at seven weeks of age because of a lack of medical care and the diagnosis of "failure to thrive." The child's mother, whose rights were ultimately terminated, attended counseling sessions for only a brief period, refused to participate in a child care program, and made periodic visits for several months but failed to visit for the six months prior to the agency's petition to terminate her parental rights. This Court, in affirming the lower court's termination order, determined that the mother "did not take advantage of the agency's facilities, yielded to every problem, and failed to exert herself in maintaining a place of importance in her child's life." *Id.*, 299 Pa.Superior Ct. at 99, 445 A.2d at 167. *See also In re Burns*, 474 Pa. 615, 626, 379 A.2d 535, 541 (1977) ("A parent may not yield to every problem but must act affirmatively, with good-faith intent and effort, to maintain the parent-child relationship to the best of his or her ability. . . ."). Similarly, in the instant case appellant's affirmative efforts to maintain the parent-child relationship have been negligible, at best, and

his efforts to improve the circumstances necessitating the child's initial placement in foster care have not changed, nor is appellant "likely to remedy the conditions which led to ... the placement of the child within a reasonable period of time...." 23 Pa.C.S.A. § 2511(a)(5).

In sum, we are compelled to agree with the lower court that appellant "has no feeling for his son and no desire to love him, feed him, shelter him and give him parental care, control, love, protection and support." (Lower Court Opinion at 9). Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.