485 A.2d 1204

**Vickie LOOKABILL**

v.

**Glenn Eugene MORELAND, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1984.

Filed Dec. 14, 1984.

Horace M. Ehrgood, Lebanon, for appellant.

Philip B. Ebersole, Lebanon, for appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

HESTER, Judge:

This is an appeal from an Order of the Court of Common Pleas of Lebanon County terminating appellant's parental rights. Appellant alleges that the trial court abused its discretion by severing his right to his three children. For the following reasons, we affirm the Order of the court below.

Appellant and his former wife, appellee herein, were married on April 6, 1974, and thereafter resided in West

Virginia. Three children were born to them, Glenn, Brian, and Sarah. In August of 1981, appellant left the marital home and discontinued supporting his wife and children. Appellee and her children therefore returned to her parents' home in Pennsylvania. The parties were divorced in September of 1982, and on February 4, 1983, appellee married Thomas Lookabill. The couple now reside with appellee's three children in Jonestown, Pennsylvania. Appellee's husband desires to adopt the minor children whom he has supported since his marriage to appellee. Consequently, appellee instituted these proceedings to terminate appellant's parental rights to said children.

The appropriate standard of review in cases involving the termination of parental rights has been recently delineated by this Court in *In re Adoption of James J.*, 332 Pa.Super. 486, 481 A.2d 892 (1984). Our appellate function is limited to a determination of whether the decision to terminate parental rights is supported by competent evidence. If our comprehensive review of the record does not reveal an abuse of discretion, an error of law, or insufficient evidentiary support for the lower court's findings, the order must stand.

The burden of proving that parental rights should be terminated rests upon the party seeking to terminate another's parental rights. To prevail, the petitioner must produce clear and convincing evidence which instills in the mind of the court a firm conviction or belief. *Id.*, 332 Pa.Superior Ct. at 492, 481 A.2d at 896; *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Through a showing of clear and convincing evidence, the petitioner may establish the following ground which warrants the termination of parental rights:

The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

Adoption Act, October 15, 1980, P.L. 934, No. 163, § 1, eff. Jan. 1, 1981, 23 Pa.C.S.A. § 2511(a)(1). The question of whether a parent has evinced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties for a period of six months must be analyzed in relation to the particular circumstances of the case. That is, the parent's performance must be measured in light of what would be expected of an individual in similar circumstances to the parent under examination. *Matter of M.L.W.*, 307 Pa.Super. 29, 452 A.2d 1021 (1982).

■ The Pennsylvania Supreme Court has often observed that parental obligations require a continuing interest in the child and rest affirmatively on the parents. *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978); *In re W.M. III*, 482 Pa. 123, 393 A.2d 410 (1978). The parent must exert a genuine, sincere effort to establish and maintain communication, association, and a place of importance in his or her child's life. *Matter of Adoption of David C., supra.* Although favorable circumstances may enable some parents to achieve this goal with little effort, the pertinent inquiry is not the degree of success a parent may have had in reaching his or her child, but whether he or she has utilized all available resources to preserve the parental relationship. *In re Adoption of B.D.S.*, 494 Pa. 171, 431 A.2d 203 (1981).

■ At the hearing on December 5, 1983, testimony revealed that appellant only saw his children once in 1981 following the parties' separation, and four times in 1982.[1] At various times throughout 1982, appellant spoke with the children by telephone. Appellee testified that appellant sent the children two letters during this period. Appellee also stated that appellant sought to take the children to West Virginia for extended visits in August, 1982, and again in May, 1983, however, appellee denied his requests due to the unsafe condition of his automobile. Appellee stated that she never refused him the right to visit the

---

1. Appellant testified that he only recalled three visits with his children in 1982.

children in Pennsylvania. She also testified that many of appellant's telephone calls appeared to be attempts to harass her, rather than to communicate with the children.[2]

Appellant did not see his children from November, 1982, until November, 1983, when the first hearing was scheduled in this case. When questioned about why he failed to visit his children, appellant responded:

The reason was I didn't know exactly where they were, and if I ever could get a hold of them, there was always— it was always a bad taste then. It was always we want to do this, or we want to do that, and lately since their marriage, its been we want to change their names. If you let us change their names, what we do is; we'll make sure you get to see them.

Testimony regarding financial support revealed that appellant paid $1,100 from September, 1981, to June, 1982, which included a portion of the parties' income tax refund. Apparently, from June, 1982, until November, 1983, appellant made no support payments to appellee.[3] At the hearing, appellant explained, "I knew of no bills and I didn't send any money, because I couldn't afford to send any or I would have." Appellant was receiving V.A. benefits and attending school fulltime to become a welder immediately following the parties' separation. From June of 1982, when his benefits expired, until sometime in 1983, appellant remained essentially unemployed. In 1983, he started his own business as a welder/mechanic. At the hearing, appellant conceded that he was currently seeking employment elsewhere. Appellee, when asked if she knew appellant was unemployed, responded that she did because appellant had informed her that he had "no desire or reason to work."

2. As a result of appellant's abusive calls, in August, 1983, appellee and her husband acquired an unlisted telephone number. However, appellant has always had his former mother-in-law's telephone number, and appellee has promptly returned his calls upon receipt of his messages.

3. Appellee subsequently filed a complaint for support in West Virginia in July, 1983. An Order was entered in September of 1983, requiring appellant to pay $25 each month toward the support of his children.

Applying our standard of review as enunciated by *In re James,* we find that the lower court did not abuse its discretion, nor did it commit an error of law. Ample evidentiary support for its findings existed in the record. The trial court found that appellant deserted his wife and children in 1981 and has only provided meager support for them since his departure. For a period in excess of six months, appellant failed to provide that essential care, medical and dental attention, and clothing needed by small children. The court further found that appellant did not evince a desire to work and fulfill his obligations. Finally, the court rejected appellant's argument that he attempted to maintain contact with the children. Rather, it ruled that appellant's telephone calls, which often were made when the children were at school, constituted attempts to harass his former wife.

Herein, appellant admittedly did not see his children for almost a year, nor did he provide support for them during that time. Concededly, failure to provide support in and of itself is not grounds for terminating parental rights. *In re Adoption of Faith M.,* 329 Pa.Super. 304, 478 A.2d 480 (1984). However, appellant's failure to visit, write, or establish significant contact with his children during that time cannot be dismissed. His reason that "there was always a bad taste there" does not excuse his failure to visit his children. Parents must exercise a reasonable firmness in declining to yield to obstacles, *In re Baby Boy P.,* 333 Pa.Super. 462, 470, 482 A.2d 660, 664 (1984) quoting *Adoption of McCray,* 460 Pa. 210, 216, 331 A.2d 652, 655 (1975), and "must act affirmatively, with good faith intent and effort, to maintain the parent-child relationship to the best of his or her ability." *In re Burns,* 474 Pa. 615, 626, 379 A.2d 535, 541 (1977).

An uncomfortable environment often exists between two parties who are subsequently divorced. We are not convinced appellant could not overcome this obstacle for the vitally important purpose of maintaining relationships with his three children. Consequently, we concur with the lower

court in its conclusion that appellant refused or failed to perform his parental duties for a period in excess of six months and his rights in the minor subjects of these proceedings were properly terminated.

Order affirmed.

WIEAND, J., filed a dissenting statement.

WIEAND, Judge, dissenting:

I respectfully dissent. The evidence in this case reveals the unhappy aftermath of a marital breakup, but it does not establish clearly and convincingly that the appellant-father intended to relinquish parental claim to his children or that he refused to perform his parental duties. See: *In re Adoption of James P.*, 332 Pa.Super. 486, 492, 481 A.2d 892, 895 (1984); *In re Adoption of Faith M.*, 329 Pa.Super. 304, 309, 478 A.2d 480, 482 (1984). If, at times, he failed to perform fully his parental duties, his failure must be examined in light of his financial circumstances and the roadblocks put in his way by appellee. The totality of these circumstances, in my judgment, does not support an order terminating appellant's parental rights. Therefore, I would reverse.