585 A.2d 1054

**In re BABY BOY H., a Minor.**

**Appeal of JAMES K. and Patricia K., Husband and Wife.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1990.

Filed Jan. 25, 1991.

David J. Rossi, Schulykill Haven, for appellant.

Stephen P. Ellwood, Schuylkill Haven, for participating party.

Lynne G. Bressi, Pottsville, for Guardian Ad Litem, participating party.

Before CAVANAUGH, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order of the Court of Common Pleas of Schuylkill County, dismissing the exceptions of James and Patricia K., ("Petitioners"), and finalizing the court's *decree nisi* rendered on April 11, 1990. Petitioners appeal, claiming that the trial court erred in its determination that the respondent, Edward S. ("Father"), was prevented and obstructed from performing his parental duties. Finding no merit to this contention, we affirm the order of the trial court.

Baby Boy H. ("Baby") was born on October 3, 1988, to Jacqueline H. ("Mother"), in Schuylkill County, Pennsylvania. The child was placed with the Catholic Social Services Agency ("Agency"), which in turn placed Baby with Petitioners on January 21, 1989, as a foster home. Baby has remained with Petitioners since that time, except for brief visits with Father.

Father was cohabiting with Mother at the time of Baby's conception. When informed that Mother was pregnant, Father offered alternatively to marry Mother, cohabit with Mother, or have Mother raise the child with Father provid-

ing support. During the course of the pregnancy, Mother informed Father by phone that she had miscarried. Nonetheless, Mother gave birth to Baby on October 3, 1988.

When placing Baby with Agency, Mother listed Father as the natural father; at birth, Mother had not named Father as the father. Agency contacted Father inquiring whether he wished to relinquish his parental rights; Father refused. Father subsequently sought and won partial custody of Baby in a judicial proceeding. Said custody was shared with Agency, not with Petitioners.

Father visited Baby from November 7, 1988, through April 20, 1989. All visits were under the supervision of Agency and went well according to Agency records.

In early 1989, Father was informed by a friend, Keith L. ("Friend"), that Mother had denied having a child on October 3, 1988. On April 18, 1989, Agency, unable to resolve a proper amount of support with Father, filed a complaint against Father. At the subsequent support conference, Father stated his concerns regarding paternity and requested that blood tests be performed. On August 24, 1989, a court order was rendered determining the amount of weekly support Father would pay and requiring that blood tests be performed. The results of the test show that Father cannot be excluded as Baby's biological father.

Father did not visit or communicate with Baby between April 20, 1989, and November 20, 1989. Following the blood test results, Agency informed Father on November 2, 1989, that he had thirty days to prepare his home in order to take custody of Baby. Father purchased a crib and high chair, and arranged for a day care provider. Father made arrangements to pick up Baby on November 28, 1989.

On November 27, 1989, Petitioners refused to release Baby from their home to Agency. On November 28, 1989, Petitioners appeared *ex parte*, sought and received custody of Baby. The Petitioners filed a petition seeking termination of the parental rights of Father and Mother with an eye towards adoption. Mother did not contest the action.

Following dismissal of that petition, Petitioners filed this timely appeal.

The standard of review in involuntary termination of parental rights cases is limited to a determination of whether competent evidence supports the trial court decision. *Lookabill v. Moreland*, 336 Pa.Super. 520, 523, 485 A.2d 1204, 1205 (1984) (citation omitted). Unless there has been an abuse of discretion, an error of law, or there was insufficient evidence supporting the findings, the trial court's determination must stand. *Id.* Further, we note that the petitioner seeking involuntary termination of parental rights must show the existence of grounds therefor by clear and convincing evidence. *Id.* (citations omitted). The evidence must be so "clear, direct, weighty and convincing that a determination can be reached without hesitation that termination of parental rights is warranted." *In re: Adoption of Hamilton*, 379 Pa.Super. 274, 278, 549 A.2d 1291, 1293 (1988) (citation omitted).

Petitioners grounded their petition on 23 Pa.C.S.A. § 2511(a)(1), which reads as follows:

(a) **General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In reaching the determination of whether such relinquishment has occurred, all the circumstances must be considered; the relevant question is whether the parent has utilized all available resources to preserve and maintain the parent-child relationship. *In re: Adoption of B.D.S.*, 494 Pa. 171, 178, 431 A.2d 203, 207 (1981) (citations omitted).

Further, if the failure to perform parental duties results from obstructive tactics, such failure is excused. *In re: Adoption of Orwick*, 464 Pa. 549, 555, 347 A.2d 677, 681 (1975) (citation omitted). To obtain the benefit of this

excuse, a parent must exhibit reasonable firmness in attempting to overcome the obstructive behavior. *Adoption of Hutchins*, 326 Pa.Super. 276, 280, 473 A.2d 1089, 1092 (1984) *aff'd.*, 507 Pa. 557, 492 A.2d 1119 (1985) (citations omitted).

Petitioners challenge the trial court determination that Father was obstructed in the performance of his parental duties by Mother and the Agency. As an initial matter, we note that the majority of Petitioners' argument addresses itself to Father's conduct, which is claimed to constitute abandonment, not the factual findings underlying the legal conclusion that obstruction occurred. Nonetheless, as Father's conduct goes to the reasonable firmness required in the face of obstruction and as this is implicitly raised by Petitioners' statement of the question presented, we will examine their contentions.

Petitioners challenge Father's assertion that he requested blood tests because he was concerned as to the paternity of Baby. An examination of the record reveals that Mother had admitted lying to Father regarding a miscarriage. (N.T. p. 75.) In light of this, it was reasonable for Father to have concerns when faced with a later statement by Mother denying that the child was his.[1]

Petitioners also stress that Father's concerns crystallized on April 20, 1989, the date the support complaint was mailed to him. Even accepting as true Petitioners' assertion that Father first stated his concerns on April 20th, we note that he would have been unaware of the complaint as it was only mailed, not delivered to Father, on that date. Further, Father testified that he had initially requested a paternity test from the Agency six weeks prior. (N.T. p. 45.)

1. At the hearing, Petitioners challenged the admissibility of Mother's statement when related by Friend as hearsay. We note that this was not hearsay. Mother's statement was not offered to prove its truth; *i.e.*, that she had not had a child on October 3, 1988, but rather to show it had been made and been considered by Father. *Schwarcz v. Schwarcz*, 378 Pa.Super. 170, 548 A.2d 556 (1989) *alloc. denied*, 522 Pa. 578, 559 A.2d 39 (1989).

Petitioners also point to the testimony of the guardian ad litem that Father claimed he had failed to visit Baby for employment reasons. Petitioners assert that these statements are inconsistent with Father's later testimony that he did not visit Baby during the period in question due to his concerns regarding his paternity of Baby. Father testified at trial, however, that his work schedule made visitations difficult. (N.T. p. 40.)

Petitioners also point to the fact that Father has failed to register his paternity with the Commonwealth. This is an avenue for Father to assert his parenthood. Still, Father has sought custody of Baby and steadfastly resisted this petition. Further, Agency records submitted by both parties clearly indicate Father as the natural parent. Father explained he failed to file with the Commonwealth because he assumed the Agency had done this. (N.T. p. 9.)

Finally, Petitioners allege that Father's non-performance of his parental duties stems only from his own self interests. This assertion is based upon the opinion expressed by the guardian ad litem that Father seemed most concerned that his child was being taken away rather than with the best interests of Baby. Nonetheless, on cross examination, the guardian admitted that the attitude Father presented would be a natural reaction by a concerned parent. (N.T. pp. 80–81.)

In summary, we find no abuse of discretion, error of law, or insufficiency of evidence here. Competent evidence supports the trial court finding that Father was prevented from seeing Baby due to the obstructive tactics of Mother and the Agency, and that Father has exhibited reasonable firmness in attempting to overcome those tactics. Our standard of review is clear that we must accept those findings when competent evidence supports them. We will not conduct our own fact finding in this case. We emphasize that a petitioner seeking involuntary termination of parental rights must present such clear and convincing evidence that the decision to terminate those rights can be reached without hesitation. The record in this case obvious-

ly caused the Honorable Wilbur H. Rubright to hesitate. Our review of that record reveals no grounds to disturb the trial court's decision. Accordingly, we affirm.

Order affirmed.