J-S19043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: V.R.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1856 MDA 2016 |

Appeal from the Decree October 17, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): 1525 of 2016

BEFORE: GANTMAN, P.J., BENDER, P.J.E. and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E. **FILED MARCH 31, 2017**

Appellant, T.B. ("Father"), appeals from the decree entered on October 17, 2016, in the Court of Common Pleas of Lancaster County granting the petition of Lancaster County Children and Youth Social Service Agency (the "Agency") and involuntarily terminating his parental rights to his minor, dependent daughter, V.R.B. ("Child"), born in August of 2012, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).[1,2] After careful review, we affirm the trial court's decree.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By the same decree, the trial court involuntarily terminated the parental rights of F.P. ("Mother") with respect to Child. Mother did not file a separate appeal, nor is Mother a party to the instant appeal. We note the parental rights with respect to Child's two half-siblings, E.N.L. and C.R.L., were also terminated by this decree, but are not the subject of this appeal.

[2] The court incorrectly references 23 Pa.C.S. § 2511(a)(5) and (8) as subsections under which it terminated Father's parental rights in its opinion.

The trial court summarized the relevant procedural and factual history as follows:

The initial referral for this family was made to the Chester County Child Welfare Agency because 3 month old [C.R.L.] was found to have suffered multiple bilateral subdural hematomas in various stages of healing. Subsequently, after being evicted from their Chester County home, Mother and her three children were residing in a Lancaster County motel on October 27, 2016. Mother was uncooperative with the Agency. She had no plans for the family's housing other than the one room motel facility. She professed ignorance of how [C.R.L.] had been injured. The Agency filed a petition for temporary legal and physical custody and the children were placed in foster care on October 29, 2015. The children, including [V.R.B.], were found to be dependent at hearing on February 1, 2016. The [c]ourt also found that aggravated circumstances existed against Father after learning that he had been charged with a felony under 18 Pa.C.S. § 2702 relating to aggravated assault, § 3121 relating to rape, § 3123 relating to involuntary deviate sexual intercourse, § 3124.1 relating to sexual assault, and § 3125 relating to aggravated indecent assault. He had pleaded guilty to one count of aggravated indecent assault of a child and one count of endangering the welfare of a child. The victim was his niece. He has been incarcerated since September of 2013 and does not expect to be released before 2020. His maximum sentence would release him in 2033. He will be listed on Megan's List upon release. Pursuant to its finding of aggravated circumstances, the [c]ourt ordered that he be given no plan and terminated his visitation with his daughter. [V.R.B.]'s goal was set as adoption and the concurrent permanency goal was Placement with a Fit and Willing Relative.

Four year old [V.R.B.] has never lived with Father, although Mother brought [V.R.B.] to his house periodically to visit. He never paid child support, because, he explained, there was no court order obligating him to do so. While incarcerated, he attempted to stay in contact with [V.R.B.] through writing sixteen letters between April 29 and September 20 of 2016. He also wrote four letters to Agency caseworkers. On April 8, 2016, the three children were placed in the home of their maternal grandparents, where they have adjusted well. This is a

potentially permanent resource for all of the children. No services were deemed necessary for [V.R.B.]

Trial Court Opinion ("T.C.O."), filed 12/12/16, at 2-3 (citations to record and footnote omitted).

The Agency filed a petition to terminate parental rights on July 13, 2016, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). On July 14, 2016, the court entered a Preliminary Decree scheduling a termination hearing for August 22, 2016. On August 22, 2016, the termination hearing was continued until October 17, 2016, and [V.R.B.]'s juvenile court records were incorporated into the termination proceedings.[3] The trial court held a termination hearing on October 17, 2016. In support thereof, the Agency presented the testimony of Robert Pratt, the Agency caseworker supervisor. Additionally, Father testified on his own behalf.[4] By decree entered October 17, 2016, the trial court involuntarily terminated the parental rights of Father pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).

On November 15, 2016, Father, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[3] The juvenile court records were not included with the certified record. Nonetheless, we do not find these records necessary for the disposition of this appeal.

[4] Father testified via telephone from SCI Somerset, where he is incarcerated. Mother and M.J.L, the father of E.N.L. and C.R.L., were present, but did not testify.

On appeal, Father raises the following issue for our review:

Did the Agency meet its burden of introducing sufficient evidence that any of the grounds for termination of parental rights have been met where Father, although incarcerated, has availed himself of the limited means to remain involved in his daughter's life?

Father's Brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite

- 4 -

result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, controls the termination of parental rights, and requires a bifurcated analysis, as follows:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (2), as well as (b). We have

long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination order pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first examine the court's termination of Father's parental rights under Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).

In *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (2012), our Supreme Court, in addressing Section 2511(a)(2), adopted the view that "incarceration neither compels nor precludes termination" and held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 328-29, 47 A.3d at 828 (citation omitted). *See also In re D.C.D.*, 629 Pa. 325, 346-47, 105 A.3d 662, 675 (2014) (holding that father's incarceration prior to the child's birth which would extend until

the child was at least age seven rendered family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow the court's initial directive that reunification efforts be made). The Court in **S.P.** further stated,

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). **See e.g. Adoption of J.J.,** [511 Pa. 590, 605,] 515 A.2d [883, 891 (1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [**In re**] **E.A.P.,** 944 A.2d [79, 85 (Pa.Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

**In re Adoption of S.P.**, 616 Pa. at 331-32, 47 A.3d at 830 (footnote omitted).

Herein, Father acknowledges "incapacity, as opposed to abandonment, can be grounds for termination if the conditions and causes of the incapacity cannot or will not be remedied by the parent." Father's Brief at 16. Father further notes that while four years is a significant portion of a young child's life, there is no "bright line rule regarding the length of a remaining prison sentence which automatically disqualifies a parent." **Id**. Father stresses that

V.R.B. may be "*only* eight years old when he is released [from prison] and she would still be in the middle of her childhood." *Id.* (emphasis in original). Father concludes that although subject to Megan's Law, he is not restricted from having contact with minors and may be able to rehabilitate given the potential for his entry into the Sexual Offenders Program and his ability to obtain additional counseling in prison. *Id.* at 17.

In finding grounds for termination, the trial court noted:

> Although Father testified that he did attempt to stay in contact with [V.R.B.] through letters, the [c]ourt does not see his activities as a serious effort, noting that he did **not** begin to write [V.R.B.] immediately after his incarceration in September of 2013, but took no action to stay connected with her until after the February, 2015 dependency hearing, which served to inform him that his parental rights were at risk through aggravated circumstances and the denial of a plan. Although he was imprisoned in September of 2013 and [V.R.B.] was placed in foster care in October of 2015, it was not until April of 2016 that he sent the first of 16 letters to her. He will remain in prison for at least another 4 years, with the possibility of an extension of his incarceration until the time [V.R.B.] is an adult. Thus Father's contact with his daughter, who certainly does not remember him since she was only one year old when he went to prison, has been 16 letters to a child who cannot read – i.e., effectively letters from a stranger. The [c]ourt understands that this is an effort on Father's part, despite its flaws. However, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's needs for permanence and stability to a parent's claims of progress and hope for the future.["] *In re Adoption of R.J.S.*, 901 A.2d 502[, 513] (Pa. Super. 2006). A parent's performance must be measured against what would be expected of an individual in similar circumstances to a parent. *Lookabill v. Moreland*, 485 A.2d 1204[, 1206] (Pa. Super. 1984) [(citing *Matter of M.L.W.*, 452 A.2d 1021 (Pa. Super. 1982))]. Father sent a non-reading child letters. Even in prison, he could have managed to arrange for cards, pictures, etc. things which have more meaning to a child. The [c]ourt would expect an appropriate parent to take

action earlier in his sentence term and continue in a way that would have meaning to a child as she aged into the toddler years. Father's late and insufficient effort was not weighty enough to serve to keep [V.R.B.] in the limbo of foster care and away from a chance for permanence and stability in her current placement.

Other aspects of father's life obligate the [c]ourt to terminate. In 2020, [V.R.B.] will be eight years old. This court cannot begin to imagine a circumstance in which any judge would place a little girl with a man with Father's criminal history of sexual crimes against his niece. Therefore, even if his rights had not been terminated, Father would be a parent in name only, since he is not in a position to be given custody of his daughter and there is no way he can remedy the situation.

T.C.O. at 6-7 (emphasis in original).

A review of the record supports the trial court's determination of a basis for termination under Section 2511(a)(2). Significantly, Father has been incarcerated since September 2013, when Child was one year old, and has a **minimum** release date of 2020, when Child will turn eight years old. Notes of Testimony ("N.T."), 10/17/16, at 28-29, 35. Although Father indicated that he regularly saw Child before his incarceration, his contact since has been limited to correspondence which was not sent until after the commencement of the dependency matter.[5, 6] N.T. at 23-24, 27-28, 30-32. **See also** Defendant [Father] Exhibit 1.

---

[5] Father testified that he was not aware he could send letters to Child until he asked his attorney once the dependency matter arose and was advised he could send them to the Agency. N.T. at 30-32.

[6] Father additionally contacted the Agency and COBYS, Church of the Brethren Youth Services, *via* telephone and letter on several occasions
*(Footnote Continued Next Page)*

Further, Father was denied a reunification plan due to the finding of aggravated circumstances, and visitation was terminated. *Id.* at 12. While Father signed up for numerous programs upon his incarceration, such as the Sexual Offenders Program and Therapeutic Community drug and alcohol rehabilitation,[7] he still is on the waiting list,[8] having only completed Narcotics Anonymous. *Id.* at 29-30, 34-35. Father testified that parenting classes, however, are not offered. *Id.* at 29.

Even assuming that Father is released from prison at the earliest possible opportunity, that is four years from the date of the termination hearing. At that time, Child will have been in custody of the Agency for five years. Moreover, it is speculative that Father will then, or ever, be in a position to care for Child. This prospect is simply unacceptable for Child. As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

regarding Child. However, telephone calls were unable to be returned and mail sent to Father was returned. N.T. at 20-23, 26. ***See also*** Defendant [Father] Exhibit 1.

[7] Father also references this as "IC," intensive care for drug addiction. N.T. at 29.

[8] Father explained that participation in these programs is based upon an inmate's minimum date. *Id.* at 29-30, 34-35.

and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being. ***See In re Adoption of M.E.P.***, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. ***See id.*** As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b). ***In re B.L.W.***, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]***, [553 Pa. 115, 123, 620 A.2d 481, 485 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 620 Pa. at 628-29, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer

- 12 -

that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Moreover,

[w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted) (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super. 2008))) (internal citations omitted).

In the case *sub judice*, in reasoning that termination of Father's parental rights favors Child's needs and welfare under Section 2511(b) of the Adoption Act, the trial court stated:

There is no question in this case that the best interests of the child will be served by remaining right where she is – with her grandparents and her half-siblings. She is not even acquainted with her father, having been a one year old infant when she saw him last. All [V.R.B.] could know of him is that there is someone who for six months wrote her letters she cannot yet read. There can be no bond whatsoever between them. He has never tended to her needs. He is in prison. He has no job, no home, no resources. The timing of whether he will ever be available to parent her – in physical or psychological terms – is an unknown element, and, because of his criminal history, is an unlikely occurrence. He is a sexual predator and will be listed on Megan's List. She lives with her grandparents and they have formed a meaningful bond. She is living with her two half-sisters. There is no support for father's position in these facts. His parental rights must be terminated to serve [V.R.B.]'s best interests. It is the [c]ourt's determination that [V.R.B.]'s best interests will be served by her remaining right where she is, with her grandparents and her sisters.

T.C.O. at 7-8.

Father, however, presents no argument related to Section 2511(b). As such, we find that Father has waived any challenge regarding Section 2511(b) and Child's needs and welfare. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (stating, "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S. § 2511(a)(2) and (b). We, therefore, affirm the decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017