J-A15026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.E., FATHER | |
| | No. 20 MDA 2017 |

Appeal from the Order Entered November 30, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000256-2016
CP-67-DP-0000257-2016
CP-67-DP-0000258-2016

| | |
|---|---|
| IN THE INTEREST OF: W.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.E. | |
| | No. 21 MDA 2017 |

Appeal from the Order Entered November 30, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000257-2016

| | |
|---|---|
| IN THE INTEREST OF: L.E., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.E. | |
| | No. 22 MDA 2017 |

J-A15026-17

Appeal from the Order Entered November 30, 2016
In the Court of Common Pleas of York County
Domestic Relations at No(s): CP-67-DP-0000256-2016
CP-67-DP-0000257-2016
CP-67-DP-0000258-2016

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 10, 2017**

Appellant D.E. ("Father") appeals from the orders dated November 30, 2016, which suspended visitation with his three children who had been found dependent pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365.[1] We dismiss Father's appeals as moot.

K.C. (born 2007), W.E. (born 2010), and L.E. (born 2016), are the three biological children of Father and his wife, S.E. ("Mother"). On August 30, 2016, the York County Office of Children, Youth, & Families

---

[1] An order suspending a parent's visitation with a dependent child may qualify as an appealable collateral order. *See In re J.S.C.*, 851 A.2d 189, 191-92 (Pa. Super. 2004) (citing *In re Rhine*, 456 A.2d 608 (Pa. Super. 1983)). Because (1) Father's visitation rights are separable from the dependency adjudication and disposition, (2) were too important to be denied review at the time of the appeal, and (3) would not be recouped following the final resolution of the dependency action, we conclude that the November 30, 2016 visitation order was appealable as a collateral order at the time Father appealed it. *See* Pa.R.A.P. 313 ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"); *cf. In re J.R.*, 875 A.2d 1111, 1114 (Pa. Super. 2005) (holding order requiring DHS to provide funds for home telephone service to facilitate father's visits reviewable as collateral). As discussed below, our holding that there was collateral order jurisdiction does not preclude our holding that the issue later became moot.

- 2 -

("Agency") filed applications for emergency protective custody of all three children based on allegations that Father had physically abused W.E.[2] The applications were granted and the children were placed into foster care.[3] As a result of the allegations of abuse, Father was charged with simple assault, endangering the welfare of a child, and harassment.[4] Father and Mother were granted bi-weekly supervised visits with the children.

A dependency petition was filed on September 2, 2016, and a dependency hearing was held on September 15, 2016. The parties agreed to an adjudication of dependency for all three children.[5] Bi-weekly visitation rights remained the same.

On November 30, 2016, a permanency review hearing was held. The Agency's caseworker testified that the Agency's investigation had resulted in

_____

[2] The exact allegations of abuse are unclear. According to the applications, W.E. was "talking back" to Mother, and put in "time out." Mother was cooking when Father came home; she heard a loud noise in the next room and found W.E. with a cut lip. The Agency, which had received a referral regarding the abuse, requested that Mother take W.E. to the hospital for an examination, where it was observed that W.E. had "injuries all over his body as well as to his face and [a] cut on the inside of his lip." Appl. for Emergency Protective Custody, 8/30/16. The applications also state that Mother threatened to drown herself in the Codorus River if the children were removed from her care, and that Mother was subsequently involuntarily committed to a hospital for a psychiatric evaluation.

[3] W.E. was later placed in the care of his maternal aunt, but was subsequently returned to foster care.

[4] 18 Pa.C.S. §§ 2701(a)(1), 4304(a)(1), and 2709(a)(1), respectively.

[5] The court deferred a finding of abuse pending completion of the investigation by the Agency and the criminal investigation.

an indicated finding of abuse. The caseworker reported on the status of the parents, the children, and the visits among them. The court also heard testimony from the director of Catholic Charities (the program which had been supervising the visits)[6] and the foster caretakers of the children.

At the conclusion of the November 30, 2016 hearing, the court suspended Father's visitation rights with all three children. The court stated: "Given the Guardian Ad Litem's recommendations, given the indicated finding, [and] given the criminal charges . . . we're not going to have any contact between [F]ather and the children at least until further Order of Court." N.T., 11/30/16, at 58.[7] The court entered status review orders for each child that stated, "Father shall have no further visits with the children until further order of court." Attachment to Status Review Hearing Orders, 11/30/16, at 3. In an "Opinion and Order" the next day, the court explained, "testimony . . . relative to [W.E.]'s highly negative reactions to Father's visits, combined with Father's indicated finding of abuse and his pending criminal charge all lead this Judge to believe that [Father] visiting with any of the children at this point in time, would rise to a grave threat of harm to

_____

[6] The Catholic Charities witness did not testify regarding any of Father's visits.

[7] The court did not make a finding as to abuse at the November 30, 2016 hearing.

any of the children." Op. and Order, 12/1/16.[8] Father filed a motion for reconsideration on December 7, 2016, which was denied on December 13, 2016. On December 29, 2016, Father appealed the November 30, 2016 orders.

On February 2, 2017, the trial court entered a new order that it said "amended" its November 30, 2016 orders.[9] The February 2, 2017 order allowed for supervised visits between Father and L.E. and provided that Father's visitation with the two older children was "temporarily terminated" but would resume as a "therapeutic reintroduction" upon a recommendation by Father's therapists. **See** Amended Status Review Order, 2/2/17. The court entered this order because "the [c]ourt determined it erred and now enters an Amended Order consistent with the laws of the Commonwealth." **See** Op. in Support of Amended Status Review Order, 2/2/17, at 1.

---

[8] Although the parties disagree about whether the standard was correctly applied, they agree that the "grave threat" standard referenced by the trial court was applicable when contemplating a reduction of Father's visitation rights in this case. **See In re L.T.**, 158 A.3d 1266, 1283 (Pa. Super. 2017):

> When reunification is contemplated, a juvenile court cannot deny or reduce visitation absent a "grave threat" to the dependent child. . . . In contrast, when the goal is an alternative to reunification, the juvenile court may limit or deny visitation as long as the reduction satisfies the best interest of the child. [Quotation marks and citations omitted.]

[9] The order is dated February 1, 2017, but was entered on the docket on February 2, 2017. For ease of reference, we will use the February 2 date.

On February 13, 2017, the court held a permanency review hearing.[10] At that hearing, the family therapist working with both Father and Mother recommended that visits with all of the children recommence so long as they are supervised, and the court accordingly ordered visits to commence. N.T., 2/13/17, at 26-27, 44-46; Permanency Review Orders, 2/13/17.[11] Once it was established that visitation would restart, Father's attorney stated:

> If those visits resume among the Father and all three of the children, that makes my appeal moot; and obviously I will withdraw that because that is really what my main concern was to have visits, whether therapeutic supervised or whatever, to have visits and contact so that the team can report to the [c]ourt how they are progressing towards reunification.

N.T., 2/13/17, at 42. The court responded that "if you had not filed the appeal and I had not made the amended order, I would have been restoring some visitations for dad today anyway just in light of the attempts mom and dad are trying to make." *Id.* at 42-43.

The next day, February 14, 2017, Father pled guilty to simple assault of a child. He was sentenced to serve six to twenty-three months of incarceration, to commence on March 11, 2017, followed by two years' consecutive probation.

_____

[10] The transcript of this hearing has been made a part of the supplemental record.

[11] The court clarified that although the order of February 2, 2017, called for "therapeutic" visits, the court would allow for any supervised visitation to occur at the recommendation of the therapist. *Id.* at 41-42, 60-61.

On February 17, 2017, the guardian *ad litem* for the children filed for reconsideration of the Permanency Review Order of February 13, 2017. The motion claimed that (1) Father's plea of guilty changed the conclusion of the Agency's investigation to a "founded" incident of abuse, and (2) Father violated the terms of the order because he was present and unsupervised at a visit with the two older children and Mother on February 14, 2017.[12] Thus, the guardian *ad litem* requested that the visits be suspended until the various therapists, the Agency, and the program supervising the visits agreed on how to conduct the visits. On February 22, 2017, the court granted the motion and again suspended visits, pending a hearing.

On March 7, 2016, Father filed his brief with this Court, raising the following issues:

> I.      Whether the trial court erred in not considering the grave threat to the child standard for establishing visitation between a parent and a child as set forth in ***In re Rhine***, 456 A.2d 608 (Pa. Super. 1983).
>
> II.      Whether the trial court erred in directing that there shall be no contact visits among the minor children and the father until further order of court when clear and convincing evidence was not presented to show that even supervised visitation would severely endanger the children.
>
> III.      Whether the trial court erred in not considering other practicable visitation options that permit visitation and protect the children.

---

[12] According to the motion, the children had a visit with Mother at a public library; Father was not supposed to be present but K.C. saw him walk by, and W.E. saw Father's van parked outside. Motion, 2/17/17, at ¶ 15-19.

IV.  Whether the trial court erred in directing that there shall be no contact visits among the minor children and the Father until further order of court as foreclosure of parental visitation is contrary to the Juvenile Act's goal of family preservation.

Father's Brief at 12 (some capitalization omitted).

Father argues that the trial court disobeyed the dictates of *In re Rhine*, in which this court reversed a complete denial of visitation rights, because "no expert testimony or witnesses were presented to establish any basis for terminating the father's parental visitation with his children." Father's Brief at 22. Father complains that the only individuals to testify regarding the nature of the visits between Father and the children were the Agency caseworker and the foster father, and that the court "did not rely on evaluations or testimony from psychologists or experts." *Id.* at 22, 24. Therefore, Father concludes, the court's determination of a grave threat was not supported by competent evidence. *Id.* at 23.

After filing his appellate brief with this Court, Father reported to prison to begin serving his sentence on March 11, 2017. On March 17, 2017, following a hearing,[13] the trial court ordered that visits between Father and L.E. resume, that Father's visits with K.C. and W.E. resume upon the recommendation of the children's therapists, and that the visits be conducted according to the recommendations of those therapists. *See* Ex. 2

_____

[13] The full transcript of the hearing is not part of the certified record, and the hearing is not reflected on the docket.

to Resp. at 2.[14] Due to his conviction for simple assault of a child, the prison denied Father visitation with the children. N.T., 5/10/15, at 13.

A bifurcated hearing was held on May 10, 2017, and June 15, 2017,[15] which addressed, among other things, allegations that Father had sexually abused W.E. *See* N.T., 5/10/17, at 58. While no finding regarding sexual abuse appears in the certified record, the court held another hearing on August 1, 2017, following Father's motion for reconsideration of the court's finding regarding sexual abuse. The court subsequently entered permanency review orders for each child which stated, "Visits with [F]ather, upon [his] release from prison, shall be supervised." Orders, 8/1/17.[16] On August 11,

_____

[14] The court also stated that visits should be a "goal":

> So it's the order of this Court that the [A]gency work with therapist for [W.E.] and the therapist for [K.C.] to try to see if therapeutic visits between either or both of these children and [F]ather can be had in or out of prison and they work towards that as a goal. . . .
>
> And we're not ordering, but we're asking the therapists to make this an issue that they try to discuss with [the children] relative to visitation with [F]ather[:] should it occur, when should it occur, how should it occur, and so forth. We're sure the therapists are aware of the trauma these children have suffered and will do that in a very appropriate way.

*See* Ex. 2 to Resp. at 2-3.

[15] The first portion of this hearing transcript has been made a part of the supplemental record, but the second portion of the transcript has not.

[16] The August 1, 2017 orders are not included in the certified record, but their text is set forth in the trial court dockets.

2017, Father was released from incarceration. Resp. at ¶ 12. On August 14, 2017, the Agency filed a petition to terminate Father's parental rights.

On August 24, 2017, we issued an order directing Father to show cause as to why these appeals should not be dismissed as moot. Our order referenced some of the orders entered by the trial court after November 30, 2016; we note that none of the later orders has been appealed to this Court. Our August 24 order stated:

> The [November 30, 2016] order[s] under appeal denied Appellant visitation with his children. Appellant appealed only that issue to this Court. The record, the parties' briefs, and the trial court's opinion, however, reference subsequent orders entered February 2, 2017, and February 13, 2017, that grant Appellant visitation. Indeed, Appellant told the trial court that his appeal may be moot. **See** N.T., 2/13/17, at 42. As a general rule, our appellate courts will not decide moot questions; an actual case or controversy must exist at all stages of appellate review to avoid dismissal for mootness. **In re 2014 Allegheny Cty. Investigating Grand Jury**, 147 A.3d 922, 923-24 (Pa. Super. 2016); **In re Gross**, 382 A.2d 116, 119-20 (Pa. 1978) (legal question can become moot on appeal as result of intervening change in facts of case); **Erie Ins. Exch. v. Claypoole**, 673 A.2d 348, 353 (Pa. Super. 1996) (*en banc*) ("a change in the facts may render a case moot even though it had once been actual").

Order, 8/24/17.

Father filed a response on September 7, 2017. Father asserts that exceptions to the mootness doctrine apply. **See** Resp. at ¶ 4-5. He cites **Com., Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cty.**, 32 A.3d 639, 652 (Pa. 2011), which states that a case is not moot where "the conduct complained of is capable of repetition yet likely to evade review,

where the case involves issues important to the public interest[,] or where a party will suffer some detriment without the court's decision."

Father argues that the court's error is capable of repetition yet evades review because the orders following the November 30, 2016 orders suspended visitation until and upon the recommendation of the children's therapists and therefore also violate **In re Rhine** because "the trial court did not order visits, but rather left visits up to the discretion of the children's therapists." Resp. at ¶ 8-9. Father also suggests that without review, he will suffer detriment. He contends that because of the orders, he has not had any visits with K.C. or W.E., and only has infrequent visits scheduled with L.E. **Id.** at ¶ 5. Father points out that because he has had no contact with his children, the Agency has filed a petition for involuntary termination of his parental rights. **Id.** Specifically, according to Father, the Agency has alleged that in the six-month period preceding the filing of the petition, he has "evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." **Id.** Father also argues that his case is of public interest because the Agency, acting on behalf of the government, has deprived him of his fundamental right to a family. **Id.** at ¶ 16. Father does not address the evidence presented to the court following the November 30, 2016 hearing, including the evidence presented at the hearings of February 13, March 17, May 10, June 15, and August 1, 2017.

After careful review, we conclude that Father's appeals are moot. His appeals are from the orders dated November 30, 2016, which denied Father any visitation rights. The visitation orders that were entered after November 30, 2016, substantially changed Father's right to visitation.[17] The February 2, 2017 order allowed therapeutic visits upon a recommendation by Father's therapist. The February 13, 2017 orders allowed supervised visits. The February 22, 2017 order suspended visits. The March 17, 2017 ruling permitted visits between Father and L.E. and allowed visits with the other children if their therapists recommended them. The August 1, 2017 orders said visits would be allowed upon Father's release from prison. Father was released on August 11, 2017. Clearly, the situation giving rise to the November 30, 2016 order that is before us has changed drastically, and those changes are continuing.

Acknowledging the changes, Father's brief discusses not just the November 30, 2016 orders, but also the next order, dated February 2, 2017,

---

[17] Although these later orders were entered after Father had filed this appeal from the November 30, 2016 orders, the trial court retained jurisdiction to enter them under the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365, which bestows broad jurisdiction to enter new orders to deal with changing circumstances. *See In re J.A.*, 107 A.3d at 809 (finding that juvenile court erred in concluding that Pa.R.A.P. 1701 precluded it from revisiting the question of medical guardianship over a child while the order establishing such guardianship was under appeal, because the filing of an appeal does not divest a juvenile court of jurisdiction to proceed in a dependency matter); *In re R.P.*, 956 A.2d 449, 454 (Pa. Super. 2008) (stating that the Juvenile Act vests dependency courts "with broad discretion to act consistently in protecting the physical, mental, and moral welfare of children").

which purportedly "amended" the November 30 orders. Father argues that his objection to the November 30 orders under **In re Rhine** also applies to the February 2 order because that order also terminated his right to visit his children and was still not supported by competent evidence of a grave threat.[18] In contesting mootness, Father argues that the orders entered after February 2, 2017 suffer from this same defect. He therefore suggests that we use this appeal to adjudicate his rights under all of these orders, even though his appeals are from only the orders of November 30, 2016, and not from the rest. We conclude, however, that our appellate jurisdiction does not extend to review of any orders other than those of November 30, 2016, the appeals from which are moot.

First, we do not agree that the February 2, 2017 order was a valid "amendment" of the November 30, 2016 orders that brings any of Father's issues under the February 2 order before us. A court generally may not modify an order after thirty days have passed or if an appeal from that order has been taken. **See** 42 Pa.C.S. § 5505. A court **may** reconsider an order under appeal if an application for reconsideration is timely filed and the court grants reconsideration within the time period (here, thirty days) for the filing of an appeal. **See** Pa.R.A.P. 1701(b)(3). But while Father filed timely

---

[18] The trial court's Rule 1925(a) opinion also addresses the propriety of the February 2, 2017 order, relying in its discussion on the record from the November 30, 2016 hearing (apparently because no new evidence came before the court in the intervening period).

motions for reconsideration of the November 30 orders, the trial court denied those motions. The court therefore could not amend its orders of November 30, 2016 after they were appealed on December 29, 2016, and the order of February 2, 2017 cannot be construed as an amendment to the orders under appeal.[19] Accordingly, to the extent the February 2 order presents issues different from those under the November 30 orders — particularly, issues relating to the propriety of conditioning visitation on the recommendations of professional therapists — we conclude that those issues are not properly before us because the November 30 orders do not present them.[20]

More important, however, the February 2, 2017 order has itself been superseded by the orders that followed it. While those orders have similarly premised Father's visitation with the older children upon the recommendation of a therapist,[21] they have been based on new evidence

_____

[19] As noted above, we do not question the trial court's jurisdiction to enter the February 2, 2017 order. Our only point is that in doing so, it did not "amend" the November 30, 2016 orders that are now before us. The February 2 order stands on its own.

[20] While we do not address the merits of Father's issue under the February 2, 2017 order due to the subsequent factual developments in this case, we do note the tension within Father's argument that the trial court's decision to premise visitation upon the recommendation of a therapist was not supported by the recommendation of a therapist.

[21] Another common feature of the orders is that they require all visits to be supervised, but we do not understand Father to object to this requirement. **See** Father's Brief at 23 (stating that before the November 30, 2016 order,

*(Footnote Continued Next Page)*

- 14 -

presented to the court — most of which is not part of the certified record transmitted to this Court. Because Father did not ensure that this more recent evidence was made part of a supplemental record, **see generally** Pa.R.A.P. 1931, we are unable to review the factual bases for these later decisions. Father has not presented any argument based on any record before this Court regarding the propriety of the trial court's newer orders in light of the facts heard by the court when it entered those orders, and neither the trial court nor Appellees have had any opportunity to address any such argument. On these facts, we have no basis to use these pending appeals to address whatever issues Father may seek to present regarding the various 2017 orders that have been entered.

Under these circumstances, these consolidated appeals are moot. As our August 24 order recognized, "[i]t is a well-established principle of law that this Court will not decide moot questions. . . . An issue can become moot during the pendency of an appeal due to an intervening change in the

_(Footnote Continued)_ _____

the "visits were also supervised, providing a greater level of protection to the children," and "father is currently seeking supervised visitation"); **id.** at 19 ("Supervised visitation ensures that there is no risk of physical or emotional harm to the children"); **id.** at 27 ("There was no indication that supervised visits could not continue given that none of the children were in any danger during the visitation," and "[i]n making the determination to suspend all contact among the father and the children, the trial court did not consider other practicable visitation options that would permit ongoing contact among the father and the children and also ensure the safety of the children"); **see also id.** at 28 ("The court also did not consider to allow ongoing telephone contact among K.C., W.E., and the father as an alternate means of keeping in communication").

facts of the case or due to an intervening change in the applicable law." ***Com., Dep't of Envtl. Prot.*,**,, 32 A.3d at 651 (citing ***In re Cain***, 590 A.2d 291, 292 (Pa. 1991)); ***see Gross***, 382 A.2d at 119-20; ***Erie Ins. Exch.***, 673 A.2d at 353. The changing facts have made Father's appeals from the November 30, 2016 orders no longer capable of resolving the parties' present situation.

None of the exceptions to the mootness doctrine applies here. Those exceptions are: "1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court." ***Ferko-Fox v. Fox***, 68 A.3d 917, 920 (Pa. Super. 2013). First, although, at the time of their filing, Father's appeals from the November 30, 2016 orders had sufficient importance to meet the second requirement of the collateral order rule (***see*** note 1, *supra*), that importance has dissipated in light of the trial court's entry of the superseding visitation orders in 2017. Indeed, the specific mandate of the November 30, 2016 orders (preclusion of all visitation by Father) is no longer of direct import to the parties themselves because the trial court quickly rescinded it and then crafted (and repeatedly revised) conditions under which Father could have visitation rights. Second, the evolving factual developments which underlie whether competent evidence supports the most recent court orders regarding visitation make the factual situation addressed by the

November 30, 2016 decision unlikely to repeat. Finally, to the extent that Father argues he will suffer detriment without our intervention because the Agency has petitioned to terminate his parental rights, Father strays from the confines of an appealable collateral issue, which by its nature is separate from the ultimate merits of the dependency case. Once the dependency case is disposed of, Father may appeal that determination and the evidence supporting it.[22]

For all of these reasons, we find the instant appeals to be moot. We appreciate Father's argument that the successive orders restricting his visitation rights have kept him from his family, and we understand the frustration created when each new superseding order gives rise to a new need to appeal. But much of the fluidity in this landscape has been created by Father and his changing circumstances — particularly, his incarceration for abusing his son. The trial court has a responsibility to adjust its orders to the changing facts. The most recent changes have made any further

---

[22] To the extent that the trial court's orders restricting visitation during a dependency case can contribute to the disposition, we note that where a parent is prevented from visiting a child, such failure cannot be a basis upon which to terminate parental rights. *See In re Baby Boy H.*, 585 A.2d 1054, 1056-57 (Pa. Super. 1991). We further note that the main reason Father has been deprived visitation with his children this year has been Father's incarceration. *See generally In re P.S.S.C*., 32 A.3d 1281, 1286 (Pa. Super. 2011) (although "a parent's absence and failure to support a child due to incarceration is not conclusive on the issue of whether the parent has abandoned the child," the parent's responsibilities "are not tolled during incarceration, and therefore the court must inquire whether the parent utilized those resources available while he or she was in prison to continue a close relationship with the child").

consideration by this Court of Father's appeals from the trial court's November 30, 2016 orders inappropriate. Accordingly, we dismiss the appeals as moot.

Appeal dismissed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017